Matter of the Application of CLARENCE R. CIPPERLEY, and other Electors and Taxpayers of the town of Chautauqua, N. Y., for a Special Town Meeting in said Town, to be held under Section 16 of the Liquor Tax Law and the General Laws of the State of New York.*

(County Court, Chautauqua County, December, 1905.)

Intoxicating liquors — Local option — Validity of local option election — Petition for submission — Re-submission.

The fact that all the duly acknowledged signatures of the requisite number of town electors, petitioning under section 16 of the Liquor Tax Law (L. 1896, ch. 112) for a submission of the question of local option to a special town meeting, were not on one paper is not a valid objection to the petition.

Whether the petition was signed and acknowledged as required by law cannot be raised upon the motion for re-submission, for, if

---

* Received too late for insertion in proper place.

there is no legal petition, then the election is illegal and void and the law affords adequate relief in a proper proceeding.

At the biennial town meeting in the town of Chautauqua, held in connection with the general election, November, 1905, the constitutional amendments, consecutively numbered from 1 to 7 inclusive, were placed first on the voting machine and then followed four questions in regard to the sale of liquor, numbered 8, 9, 10 and 11, with the captions required by section 16 of the Liquor Tax Law. On an application for a re-submission of the questions of local option to a special town meeting upon the ground that the questions should have been numbered 1, 2, 3 and 4 as in section 16 of the Liquor Tax Law, held, that they were properly and legally submitted.

Though several electors state in their affidavits that they were misled by the manner the questions were placed on the machine or numbered, but an examination of the returns does not lead to the conclusion that any considerable number were misled or voted differently than they intended, a re-submission to a special town meeting is not justified.

Serving coffee and doughnuts to electors within prohibited limits and soliciting their votes, though it might subject the offenders to prosecution, is not sufficient ground for a re-submission.

Nor will a re-submission be ordered upon allegations that the business interests of the town will be injured unless the sale of liquor is carried on in the community.

MOTION to submit the question of local option under the Liquor Tax Law to a special town meeting of the town of Chautauqua, N. Y.

A. A. Van Dusen, for petitioners.

Daniel A. Reed, for State Commissioner of Excise.

George E. Towne, for town board of town of Chautauqua, intervening, in opposition.

FISHER, J. This is a motion to submit the question of local option under the Liquor Tax Law to a special town meeting of the town of Chautauqua, county of Chautauqua, N. Y., upon the ground that such question was not properly submitted at the biennial town meeting held in connection with the general election November 7, 1905.

It is contended on behalf of the petitioners that the elec-

tion was invalid for the reason that, although it is conceded that the required number of electors signed the petition which was filed with the town clerk, the petitioners' names were on two separate papers or petitions, instead of one; and it is further urged that the names of the signers to the petition were not acknowledged as required by law.

A petition, as required by section 16 of the Liquor Tax Law, is the foundation for the submission of these ques-. tions to the electors.   It must be " a written petition, signed and acknowledged by such electors before a notary public or other officer authorized to take acknowledgments or administer oaths."   It has been held that the Legislature intended to require a certificate of acknowledgment in the form necessary to prove the conveyance of real property, in order that there might be some proof of the genuineness of the signatures.   Kennedy v. Warner, unreported opinion of Sewell, J.

It would not seem to be a valid objection that the names of the petitioners were not all on one paper, if, for convenience, to save time, or for other reasons, the required number of electors have requested the submission of the question. and their signatures on the several papers were acknowledged as required by law.   The suggestion that the petition was not signed and acknowledged as required by law, it seems to us, is of a more serious character than the. objection that the names were not all on one paper; but this question cannot be raised in this proceeding.   If the petition, in its form, in the number of its signatures, in its execution and acknowledgment, is not a substantial compliance with the statute, then the election is illegal and void, and the law affords adequate relief in a proper proceeding.   If the petition is defective, insufficient, and not a legal petition, life cannot be infused into it by an order of the court providing for resubmission, It is a condition precedent for an order for resubmission, that a legal petition was presented, requesting a submission of such questions; and then, if the four propositions " shall not then have been properly submitted the court shall order a resubmission at a special town meeting."   Matter of Rogers, 41 Misc. Rep. 389.

Misc.]     County Court, Chautauqua County, December, 1905.

Having disposed of this objection, we come to the consideration of this application on its merits. At this election, held in the town of Chautauqua on November 7, 1905, voting machines were used. On the line or space in the voting machine with the constitutional amendments were also these liquor tax questions. This is in accordance with the provisions of section 16 of the Liquor Tax Law and section 82 of the Election Law.

Section 6 of article 1 of the Election Law provides that constitutional amendments " Shall be separately and consecutively numbered." At this election the constitutional amendments, seven in number, were placed first on the machine and numbered consecutively from one to seven, inclusive, and then followed the questions in regard to the sale of liquor, numbered question 8, question 9, question 10, question 11. It is not contended by the learned counsel for the petitioners that the constitutional amendments did not have their proper place on the machine, or that the questions pertaining to the sale of liquor should have been placed on the line first, but that the questions submitted touching the sale of liquor should not have been numbered 8, 9, 10 and 11 — but 1, 2, 3 and 4, as they appear after the word question, in section 16 of the Liquor Tax Law.

It is conceded, and so appears by copy of the ballot attached to the moving papers, that the captions were the same as provided by section 16 of the Liquor Tax Law, and the questions under such captions and numbers were precisely as provided by said section, and under each of said questions were the words " yes " and " no," affording the elector an opportunity to vote yes or no, for or against either proposition, as he saw fit.

It is claimed that, by reason of this arrangement and numbering, a large number of voters were misled and voted under the wrong numbers, voting under the numbers 1, 2, 3 and 4, for the constitutional amendments, instead of under 8, 9, 10 and 11, for excise questions; and that a large number of the electors, ninety-nine in number in the first election district of the town, were so mystified that they did not vote at all upon the questions touching the sale of liquor. Section 168

of the Election Law provides: "The officers or board charged with the duty of providing ballots for any polling place, shall provide therefor two sample ballots, which shall be arranged in the form of a diagram showing the entire front of the voting machine, as it will appear after the official ballots are arranged for voting on election day. Such sample ballots shall be open to public inspection at such polling places during the day next preceding election day."

It is conceded that such sample ballots were provided at each of the polling places, as provided by law, thus affording every voter an opportunity to examine such sample ballot and see the entire front as the voting machine would appear when he entered the booth. These ballots showed the questions relating to the sale of liquor numbered 8, 9, 10 and 11.

The Election Law further provides: "Section 176. In case any elector, after entering the voting machine booth, shall ask for further instructions concerning the manner of voting, two inspectors of opposite political parties shall give such instructions to him." And it appears by the affidavit of Lewis M. Smith, that, in many instances, the inspectors of election did, as provided by this section, give such instructions to the voters.

It is difficult to see how a voter possessed of sufficient intelligence to exercise the elective franchise, with the sample ballot before him and with the election inspectors to aid him in case he desired further instructions, could have been misled or mistaken in casting his vote.

Attached to the moving papers is a paper purporting to be a sample ballot, of the form in which the ballot would appear on election day, which was distributed about the town previous to election by those interested in the sale of liquors, to inform the electors so that they might vote intelligently upon these questions. And, in this sample so distributed, the constitutional amendments are numbered 1, 2, 3, 4, 5, 6 and 7; then follow the liquor questions, with the captions and questions precisely as they did appear upon the voting machine, and in the same spaces and in every particular as they appeared on the voting machine, except the numbers are 1, 2, 3 and 4, instead of 8, 9, 10 and 11.

And this sample ballot so distributed further informed the voter that, " This column would be found at the top of the machine; that the first seven questions were State questions, known as ' Constitutional Amendments.' Following these seven State questions will be found the four Excise or Liquor questions. If you are in favor of the selling of liquor in accordance with the State Excise Law, push the lever to the word Yes, under each question." This information given the voters was not official, but it is difficult to understand how any one could have been misled by it.

It is claimed, however, that, notwithstanding this information that was given as required by law, and given by those who were interested in the sale of liquor, calling the elector's attention to the fact that the four excise questions followed the constitutional amendments, a large number of voters were misled. Nine affidavits are attached to the moving papers of electors who claim to have been misled by the manner in which these questions were placed upon the machine, or numbered; six of whom swear that they voted wrong, or differently than they intended, and the other three that the arrangement of these questions upon the machine was misleading.

The whole number of votes cast at said election in the town of Chautauqua was 808, and the highest number of votes cast for either of the questions touching the traffic in liquor was 537—271 of the electors not voting upon that question. An examination of the returns does not lead to the conclusion that any considerable number of the electors were misled and voted on the constitutional amendments, intending to vote upon the excise questions. The first constitutional amendment relates to the liquidation of indebtedness of counties, cities, towns and villages. The second relates to the payment of debts of the State. The third relates to the Supreme Court judicial districts. The fourth relates to the organization of cities. The fifth relates to the improvement of highways. Upon the first proposition there was cast in the town a total of 167 votes; the second, 170; third, 153; fourth, 179; the fifth, relating to good roads which was supposed to deeply interest the people, 237.

County Court, Chautauqua County, December, 1905.   [Vol. 50.

An examination of these figures does not lead to the conclusion that any considerable number of voters, if any, voted upon these constitutional amendments by mistake, or voted the constitutional amendments intending to vote upon the liquor questions.   The highest number of votes cast for any constitutional amendment was 237.

In view of the fact that some of these amendments were of such vital importance to the people of the State and the electors of the town of Chautauqua, and that 571 out of 808 of the electors failed to vote upon the proposition receiving the highest number of votes, can it not be urged that it was the indifference and lack of interest of the voter which accounted for the small number of votes that were cast upon these propositions?   Can it not be urged with equal force that the 271 voters of the town of Chautauqua who failed to vote upon the excise questions were indifferent upon the question, rather than that they were misled by the arrangement of these questions upon the voting machine?   Was the submission of the questions of local option in the town of Chautauqua at said election legal?

The only illegality claimed in this proceeding so far as the manner or method of conducting the election was concerned is that the numbers over the excise questions should have been 1, 2, 3 and 4.

In Matter of Arnold, 32 Misc. Rep. 439, this precise question was raised.   In that case there were four constitutional amendments submitted, numbered 1, 2, 3 and 4, and the excise questions were numbered 5, 6, 7 and 8.   The court said: " It would perhaps have been more orderly to submit the liquor tax questions under the same numbers under which they appeared in the Liquor Tax Law; but, inasmuch as the ballots submitted upon the motion show that the headings to the several questions were prefixed to each question upon the ballots used by the voters, explaining each question, and almost precluding any occasion for referring to them by number, I do not deem the manner of numbering the questions upon the ballot material, and do not consider that the voters could have been confused by reason thereof, as charged in the petition."

It follows, therefore, that the numbers upon the voting machine were proper and legal; that the liquor tax questions were properly and legally submitted; that all the safeguards that the law has provided for the legal conduct of an election touching the submission of liquor tax questions were provided in this case.    And, notwithstanding the affidavits annexed to the petition, I do not consider that the voters could have been or were confused or misled by reason of the arrangement of the numbers upon the machine. .

It is claimed by the petitioners that certain ladies in one of the election districts of the town occupied a portion of the power house of the Chautauqua Institution on the day of election, and dispensed coffee and doughnuts to the electors, and solicited the electors to vote against the sale of liquor in said town.    It is claimed that they did this within one hundred feet of the polls; that over the entrance to the building in which these refreshments were dispensed was the American flag, tied with a white ribbon.    In the answering affidavits it is claimed that the entrance to this building where the flag was placed was more than one hundred feet from the polls, and that no electioneering was done within the prohibited limit; and that no refreshments were served within said limit, to bribe voters.

Only two affidavits are produced of electors who claim that they were thus solicited and given refreshments, one of whom was not a voter in that election district; and the statements contained in these affidavits are denied by the ladies who had charge of the refreshments.    Even if these refreshments were served within the prohibited limits, it would not invalidate the election.    It might subject the parties offending to prosecution for violation of the Election Law.    However honorable their intentions, it is just as reprehensible that ladies should dispense refreshments on election day of the character referred to for the purpose of influencing votes, as that those engaged in the sale of liquor should dispense intoxicating liquors on election day for a like purpose.    Such conduct, if true, does not affect the result of the election, and is not sufficient ground for a resubmission of these questions at a special town meeting.

18

The county seat of Chautauqua county is located at Mayville in the town of Chautauqua. The petitioners in this proceeding are not men engaged in the traffic in liquor, but are business men of high standing in the community. In the petition they set forth that the county seat is located in said village; that there are four hotels, suitable and sufficient to accommodate the travelling public; that the village of Mayville is located on Chautauqua lake, which is a summer resort; and that, in the opinion of the petitioners, the hotels in the said village cannot be maintained and accommodations furnished unless they are permitted to sell liquors; that the prohibition of this branch of their business will be destructive to the business itself; that such a result will increase the taxes in the village and depreciate the value of the property therein, and tend to decrease the sale thereof; that the right to sell liquor in said village has existed for many years, with two exceptions, and the exceptions proved very unsatisfactory; that the people are best served when the liquor traffic is under the ban of the statute, rather than where the sale thereof is illicit.

My attention has been called to Matter of the Application of Otis A. Smith, an Elector of the Town of Bath, Steuben County, 44 Misc. Rep. 384. Bath is the county seat of Steuben county. The petition in that case set forth facts similar to those stated in this petition, as to the effect upon the business of the hotels of the village in case the sale of liquor was not permitted, and that was one of the grounds upon which the court based its action in that case in ordering a resubmission of the question at a special town meeting. In that case, however, there were a number of errors and irregularities alleged and found by the court affecting the election. The town clerk had failed to post the notices, as required by law; and the inmates of the Soldiers' Home at Bath had been permitted to vote, in violation of law. Eight-tenths of the tax payers and business men of the town had petitioned for resubmission, and for all of the reasons stated in the petition, a resubmission was ordered. In the case at bar the election was lawfully conducted. All the provisions of the statute were complied with, and it cannot be held that

it is the duty of the court to order a resubmission, whenever it is alleged that the business interests will be injured unless the sale of liquor is carried on in the community. The object of elections is to ascertain the popular will, and not to thwart it; the object of the Election Law is to secure the rights of the duly qualified electors, and not to defeat them. The electors of the town of Chautauqua, at the election held on the 7th day of November, 1905, had an opportunity to express their will upon this subject. The election was lawfully conducted. The electors were fully advised that those questions were to be passed upon at said election. It is not the duty of the court, nor has it the right, to order a resubmission of those questions except they have not been properly submitted; and, if any electors of the town of Chautauqua were so indifferent to their rights that they failed to vote upon these questions when they had the opportunity, they cannot now complain.

The motion is denied, with costs.

Motion denied, with costs.